Carolyn RUSH (Pseudonym)

. v.

T. M. "Jim" PARHAM et al.

Civ. A. No. C76–1445A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Aug. 2, 1977.

Kenneth G. Levin, Atlanta Legal Aid Society, Inc., Atlanta, Ga., for plaintiff.

Arthur K. Bolton, Stephen L. Cotter, Jefferson J. Davis, Atlanta, Ga., for State defendant.

Julian M. Longley, Jr., Asst. U. S. Atty., Carl H. Harper, Regional Atty., Stephen P. Georgeson, Eve H. Goldstein, Asst. Regional Attys., Dept. of HEW, Atlanta, Ga., for Federal defendant.

ORDER

RICHARD C. FREEMAN, District Judge.

This is an action for declaratory, injunctive, and mandamus relief and damages in-

stituted by plaintiff Carolyn Rush,[1] an individual eligible for Medicaid coverage under 42 U.S.C. § 1396 *et seq.* [hereinafter "Title XIX" or "Medicaid"], against the Commissioner of the Georgia Department of Medicaid Services [hereinafter the "State defendant"] who denied plaintiff's application for Medicaid reimbursement of proposed transsexual surgery expenses for inpatient hospital and physicians' services, and against the Secretary of the U. S. Department of Health, Education, and Welfare [hereinafter the "Federal defendant"] for approving the State Plan. The jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1343, 1361, and the doctrine of pendent jurisdiction.

The matters presently before the court are: plaintiff's motion to amend the complaint, plaintiff's motion for summary judgment, and Federal defendant's cross-motion for summary judgment. Before turning to the merits of the instant motions, a brief review of the nature and scope of the Medicaid program and a recitation of the salient facts, are warranted.

The purpose of the federal Medicaid program is to enable

> each State, as far as practicable under the conditions in such States, to furnish . . . medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services . . . .

42 U.S.C. § 1396. The program forms an integral part of the Congressional "scheme of cooperative federalism" established by the Social Security Acts, 42 U.S.C. § 301 *et seq. King v. Smith,* 392 U.S. 309, 316, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). Under the Medicaid program, *federal funding is offered to the states within a statutory framework defining* eligibility, medical assistance, and local administration. Although the program is voluntary for the states, once participation is elected, certain federal requirements must be heeded. *Shea v. Vialpando,* 416 U.S. 251, 94 S.Ct. 1746, 40 L.Ed.2d 120 (1974).

Title XIX's broad framework and general language allow participating states to tailor a State Medicaid Plan to local needs and conditions. A great heterogeneity of State Plans has thus resulted. Although the states have great latitude in their discretion, the State Medicaid Plans must meet certain statutory requirements to be approved by the Secretary of Health, Education, and Welfare for funding. 42 U.S.C. § 1396a(b).

The Medicaid Act and its attendant regulations establish minimum requirements but also offer optional provisions which a state may add to its local plan. For example: The state *must* provide medical assistance coverage to the "categorically needy" (those receiving assistance under one of the Social Security assistance programs), but *may,* as well, provide coverage to the "medically needy" (those ineligible for categorical assistance but unable to finance all their medical needs).[2] The state must provide five categories of services and procedures benefits including: inpatient hospital services; outpatient hospital services; other laboratory and x-ray services; skilled nursing, early diagnosis and screening, and family planning services; and physicians' services, 42 U.S.C. §§ 1396a(a)(13)(B), 1396d(a)(1)–(5), but may provide benefits for twelve optional procedures, as well. 42 U.S.C. § 1396a(a)(13)(C). The Medicaid program thus grants the states discretion once certain minimum federal requirements are satisfied.

Georgia has elected to participate in the Medicaid program and its State Plan has been duly approved by the Secretary of H.E.W. Among the Georgia State Plan provisions and policies are the following:

> "No reimbursement will be made for experimental surgery. *e. g.,* . . . transsexual operations."

---

1. "Carolyn Rush" is a pseudonym permitted by the court to maintain the anonymity and confidentiality of the plaintiff.

2. The Georgia State Medicaid Plan covers only the "categorically needy".

State Medicaid Plan, Attachment 3.1A, Page 2b, Item 51.

"Reimbursement will not be made for the following:

a. Cosmetic Surgery . . .

g. Experimental Surgery, *e. g.*, transsexual operations."

Policy Manual for Physicians Services, § 203.5, Item 17.

"In no case is a procedure/service, which is legal under Georgia Law absolutely prohibited for reimbursement."

Policy Manual for Physicians Services, § 200.

The Plaintiff, a state recipient of Supplemental Security Income, 42 U.S.C. § 1381 *et seq.*, is eligible for Medicaid assistance, 42 U.S.C. § 1396. The plaintiff has been diagnosed by at least two physicians as a true transsexual, who is biologically male but psychologically female. The plaintiff has both male genitalia and female breasts, has cross-dressed for five years, and has sought sex reassignment surgery for eight years. After an extensive examination, plaintiff's psychiatrist and urological surgeon[3] have communicated their diagnosis and proposed treatment to the plaintiff, plaintiff's counsel, and the State defendant:

> The diagnosis in this case is definitely that of transsexualism. She has made a mature decision in regard to sex reassignment surgery. I feel that such surgery is urgently indicated because of the feelings of despair and frustration which she has had in regard to her condition. There is no approach other than surgery which can alleviate her depression and remove the threat of suicide.[4]

Plaintiff has applied to the State defendant for Medicaid coverage of the costs of inpatient hospital care and physicians' services for the proposed sex reassignment surgery. The State defendant has denied plaintiff's application on the grounds that transsexual operations are expressly excluded from the Georgia State Plan.

Plaintiff instituted this action on September 7, 1976 contending that the medical assistance coverage requested: (1) is of the type required to be provided by the State Plan, 42 U.S.C. § 1396a(a)(13)(B), 1396d(a)(1)–(5); (2) is not barred by the unavailability of the services within the state, 45 C.F.R. § 248.10(a)(2)(ii); (3) may not be denied because of the "diagnosis, type of illness or condition, . . ." 45 C.F.R. § 249.10(a)(5)(i); (4) must be provided as it is in "the best interests" of this recipient, 42 U.S.C. § 1396a(a)(19); (5) is unlawfully prohibited by the State Plan in violation of 42 U.S.C. § 1396 *et seq.*, 42 U.S.C. § 1983, and the Equal Protection Clause of the Fourteenth Amendment.[5] In addition, plaintiff argues that because the State Plan is unlawful, it must be disapproved by the Federal defendant, 42 U.S.C. § 1396a(b), and the benefits sought by plaintiff must be provided.

The State defendant responds that transsexual surgery, the medical assistance for which Medicaid coverage has been requested, is: (1) experimental; (2) cosmetic; (3) unsuitable for this individual; (4) unavailable at this juncture as certain administrative steps must first be taken in several areas (*e. g.*, provider agreements, 45 C.F.R. § 250.21; limits on professional fees, 45 C.F.R. § 250.30(b)(3), sterilization prerequisites, 45 C.F.R. § 205.35; future utilization review 45 C.F.R. §§ 250.18, 250.19; and informed consent); and (5) unnecessary. For these reasons, the State asserts that it

---

**3.** Robert W. Laidlaw, M.D. and Robert C. Granato, M.D., both of whom have extensive experience in the diagnosis and treatment of transsexuals. Their practices are located in New York. Both doctors advise, by affidavit, that they know of no physicians providing transsexual surgery and treatment in Georgia.

**4.** Letter of Dr. Laidlaw to Dr. Granato, June 9, 1976 [Exhibit "B" in complaint], enclosed with letter of Dr. Granato to Plaintiff's attorney, June 15, 1976 [Exhibit "C" in complaint], and

in turn forwarded to the Georgia Department of Medicaid Services with Plaintiff's application for Medicaid coverage of the proposed surgery.

**5.** The constitutional claim will not be reached if a statutory determination of this action is dispositive. *Ashwander v. TVA*, 297 U.S. 288, 341, 348, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

is justified in denying Medicaid coverage for transsexual surgery, generally, and to this plaintiff, individually.

The Federal defendant limits consideration of this action to plaintiff's allegation that the Secretary of H.E.W. wrongfully approved the State Plan. The Federal defendant opposes plaintiff's claim, asserting that the Secretary's approval is discretionary and in this instance satisfies a test of reasonableness. Further, it is asserted that: (1) the State Plan comports with federal requirements of sufficiency and reasonableness, 45 C.F.R. § 249.10(a)(5)(i); (2) the Secretary of H.E.W. acted properly in approving the Georgia State Plan; and (3) sex reassignment surgery is not the only treatment which experts recommend for transsexuals. The Federal defendant opposes plaintiff's motion for summary judgment and offers a cross-motion for summary judgment in its favor.

Plaintiff's motions to amend the complaint and for summary judgment and Federal defendant's cross-motion for summary judgment will be considered *seriatim*.

## MOTION TO AMEND COMPLAINT

■ Plaintiff's motion to amend the complaint pursuant to Rule 15(a) Fed.R.Civ.P. bears three procedural and two substantive parts. All should be viewed in light of the advice of the rule that such motions should be freely granted and the general philosophy of the rules that liberal notice pleading will facilitate speedy adjudication of the presented claims upon their respective merits. C. Wright & A. Miller, *Federal Practice and Procedure*, § 1471 at 355 (1976). The procedural parts of the motion are prompted by a succession in public office holders and by government reorganization of departments and services. Federal defendant F. David Mathews, Secretary of H.E.W. and State defendant Sam Thurmond,[6] Commissioner of Medicaid Services,

named in their official capacities, have been succeeded in office by Joseph A. Califano and David Poythress, respectively, who will replace them in the case-caption. Substitution of parties who are public officers named in their official capacity is nearly automatic and proceeds here by order of this court. Rule 25(d)(1) Fed.R.Civ.P.; C. Wright & A. Miller, *Federal Practice and Procedure*, § 1960 at 676 (1976).

State defendant T. M. "Jim" Parham, named in his official capacity, has been succeeded in office as Commissioner of the Georgia Department of Human Resources by Douglas M. Skelton. Recent state reorganization, however, has removed the Medicaid program from the ambit of the Department of Human Resources and Parham and Skelton are dismissed as party defendants from this action.

■ The substantive parts of plaintiff's motion propose amendment of the prayer for damages. The first claim is for attorney's fees under the Civil Rights Attorneys' Fees Awards Act of 1976, Pub.L.No. 94–559, enacted subsequent to the filing of this action. The legislative history[7] of this enactment reveals that it created no new remedy, but merely codified existing practice in the federal courts to conform with the Supreme Court's recent ruling in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). The Act has been construed to apply to pending litigation, *Finney v. Hutto*, 548 F.2d 740 (8th Cir. 1977), and will be so construed in this action by amending the complaint to include a claim for attorney's fees.

■ The second substantive part of plaintiff's motion is a proposed claim for damages against Sam Thurmond, individually, for alleged bad faith in denying plaintiff's Medicaid application while he served as Commissioner of the Department of Medicaid Services. The State defendant

---

**6.** Plaintiff's motion to amend provided that although State defendant Sam Thurmond was to be replaced in his official capacity, he was to remain as a party-defendant, individually. See *infra*.

**7.** S.Rep.No.94–1011, 94th Cong., 2d Sess. (1976); 1976 U.S.Code Cong. and Admin.News pp. 5908, 5913.

opposes this portion of plaintiff's motion. The granting of plaintiff's proposed amendment must be measured against the prejudice to the parties. *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Zenith Radio Corp. v. Hazeltine Research Inc.,* 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). Plaintiff may be barred by res judicata from later instituting an individual damage suit under 42 U.S.C. § 1983. *Jennings v. Caddo Parish School Board,* 531 F.2d 1331 (5th Cir. 1976); *Gambocz v. Yelencsics,* 468 F.2d 837 (3d Cir. 1972); *Coogan v. Cincinnati Bar Association,* 431 F.2d 1209 (6th Cir. 1970); *Brown v. Georgia Power Co.,* 371 F.Supp. 543 (S.D.Ga.1973), *cert. denied,* 419 U.S. 838, 95 S.Ct. 66, 42 L.Ed.2d 65 (1974). On the other hand, the State defendant contends that because this amendment alters the proof, defense, and remedy, an additional four months of discovery would be required. This court would grant some additional time for discovery. The Federal defendant would suffer some delay by a deferral of this action pending further discovery, but delay alone is insufficient prejudice to deny the amendment. *Fli-Fab Inc. v. United States,* 16 F.R.D. 553, 556 (D.R.I.1954). The plaintiff, however, has requested withdrawal of this proposed damage claim if any delay were to result. Because that delay is apparent, the claim for damages against Sam Thurmond, individually, is hereby dismissed.

## MOTIONS FOR SUMMARY JUDGMENT

The complexity of plaintiff's motion for summary judgment, Federal defendant's cross-motion for summary judgment, and State defendant's arguments in opposition thereto, can be substantially reduced by determining whether *any* medical services or procedures are statutorily required to be covered by a state participating in the Medicaid program. This threshold question of

law may be dispositive and thus render a complex action appropriate for summary judgment.[8]

The Medicaid statute identifies no particular services or procedures. *Coe v. Hooker,* 406 F.Supp. 1072, 1079 (D.N.H.1976). "Medical assistance" is broadly defined, 42 U.S.C. § 1396d(a), to provide the latitude necessary for the states to formulate a Medical Plan consistent with local needs and conditions, 42 U.S.C. § 1396. This flexibility has become more and more important in a tightening economy.[9] *District of Columbia Podiatry Society v. District of Columbia,* 407 F.Supp. 1259, 1264 (D.D.C.1975). The extent of state Medicaid coverage has to be considered in the best interests of all of the recipients. *Briarcliff Haven, Inc. v. Department of Human Resources,* 403 F.Supp. 1355 (N.D.Ga.1975); *Shumate v. Parham,* C.A.No.76–383A (N.D.Ga., Feb. 22, 1977) (Freeman, J.).

■ Plaintiff contends that although state flexibility is allowed in the statutory scheme, medical assistance benefits must be provided for five broad categories of services: (1) inpatient hospital services; (2) outpatient hospital services; (3) other laboratory and x-ray services; (4) skilled nursing facility, early diagnosis and screening, and family planning services; and (5) physicians' services. 42 U.S.C. §§ 1396a (a)(13)(B), 1396d(a)(1)–(5). The Supreme Court recently ruled that *all* services and procedures within these five categories need not be covered, *Beal v. Doe,* 432 U.S. 438, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977). In *Beal* the State Plan of Pennsylvania which accorded benefits to full-term deliveries and therapeutic abortions but denied benefits for nontherapeutic, elective abortions, was held to be " 'reasonable' and 'consistent with the objectives' of the Act."

---

**8.** *Ammons v. Franklin Life Insurance Co.,* 348 F.2d 414, 417 (5th Cir. 1965); C. Wright & A. Miller, *Federal Practice and Procedure,* § 2732 at 608 (1976).

**9.** A provision requiring states participating in the Medicaid program to move toward "comprehensive" medical care, 42 U.S.C. § 1396e,

was repealed by the Social Security Amendments of 1972, Pub.L.No.92–603. The legislative history refers to the financial difficulties of some states and the faltering economy in general as reasons for this repeal. H.Rep.No.92–231, 92d Cong., 1st Sess. (1971); 1972 U.S. Code Cong. and Admin.News pp. 4989, 5087.

*Id.* at 444, 97 S.Ct. at 2371. Although Title XIX allows coverage of nontherapeutic abortions, it does not require it. *Id.* at 446, 97 S.Ct. 2366. Within the five broad categories of 42 U.S.C. §§ 1396a(a)(13)(B), 1396d(a)(1)–(5), the states are permitted to exercise reasonable discretion in formulating the State Medicaid Plan.

■ However, we believe that *Beal v. Doe, supra,* also identifies the services within the five broad categories which are required to be covered by a State Medicaid Plan and those are the services which are deemed "medically necessary". In *Beal* the Court cautioned:

> Although serious statutory questions might be presented if a state medicaid plan excluded necessary medical treatment from its coverage, it is hardly inconsistent with the objectives of the Act for a State to refuse to fund *unnecessary* —though perhaps desirable—medical services. *Id.* at 444, 97 S.Ct. at 2371 (emphasis in original).

The Supreme Court distinguishes throughout its opinion between nontherapeutic, elective procedures, on the one hand, and necessary medical treatment, on the other. *See also, Maher v. Roe,* 432 U.S. 464, 97 S.Ct. 2376, 53 L.Ed.2d 484 (1977). We conclude that Medicaid coverage is not optional or discretionary for necessary medical treatment of eligible recipients.

■ The language of Title XIX and its attendant regulations affirm this conclusion:

> For the purpose of enabling each State . . . to furnish . . . medical assistance on behalf of . . . [those] whose income and resources are insufficient to meet the costs of necessary medical services. . . . 42 U.S.C. § 1396, Appropriations.
>
> \* \* \* \* \* \*
>
> [The 'medically needy' are those] who have insufficient . . . income and resources to meet the costs of necessary

medical and remedial care and services. . . . 42 U.S.C. § 1396a(a)(10)(C)(i).

> \* \* \* \* \* \*

> Appropriate limits may be placed on services based on such criteria as medical necessity . . . 45 C.F.R. § 249.-10(a)(5)(i).

Benefits for medically necessary services are not the only Medicaid coverage which states may provide eligible recipients, but they are the irreducible minimum coverage which states must provide.

■ The determination of whether the treatment is medically necessary is a professional judgment which must be decided and certified by the attending physician in consultation with his patient. "[T]he 'key' role of the physician within the Medicaid assistance . . . ." was emphasized in *Beal v. Doe, supra* at 441 n. 3, 442, 97 S.Ct. at 2369, 2370. The preeminence of the attending physician in the Medicaid program appears in the joint legislative history of the Medicare, 42 U.S.C. § 1395 *et seq.,* and the Medicaid, 42 U.S.C. § 1396 *et seq.,* programs:

> (1) Physicians' role.
>
> The Committee's bill provides that the physician is to be the key figure in determining utilization of health services—and provides that it is a physician who is to decide upon admission to a hospital, order tests, drugs and treatments, and determine the length of stay. S.Rep.No.404, 89th Cong., 1st Sess., 1965 U.S.Code Cong. and Admin.News pp. 1943, 1986.

Furthermore, the requirement giving the patient free choice of his physician, 42 U.S.C. § 1396a(a)(23); 45 C.F.R. § 249.20, reflects an attempt by the Congress to make medical services available to the needy as they are available to the more affluent of the society. The "landmark" medical assistance programs of Medicare and Medicaid were shaped from a decision in favor of private enterprise and against state or socialized medicine as it is practiced in other countries.[10]

---

10. *See,* 111 Cong.Rec. 6972 (1965) (remarks of W. Mills); 111 Cong.Rec. 15037 (1965) (remarks of R. Long); and 111 Cong.Rec. 17729 (1965) (remarks of W. Mills).

■ The attending physician's professional judgment concerning appropriate treatment where medically necessary must suffer no interference. In *Beal v. Doe,* *supra* at 448, 97 S.Ct. 2366, the Pennsylvania State Plan requirement that two additional physicians concur in the attending physician's determination that his patient's abortion is medically necessary, had not been addressed by the Court of Appeals and was considered to be in possible "conflict with Title XIX." *Id.*

On this record, we were unable to determine the precise role played by these two additional physicians, and consequently we are unable to ascertain whether this requirement interferes with the attending physician's medical judgment in a manner not contemplated by the Congress. The judgment of the Court of Appeals is therefore reversed, and the case is remanded for consideration of this requirement. *Id.*

*See, Id.* at 441 n. 3, 445 n. 9, 97 S.Ct. 2376 and *Doe v. Bolton,* 410 U.S. 179, 192, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973). The attending physician, with the informed consent of the patient, must decide the course of treatment determined medically necessary.[11] The physician's treatment decision is understood to be governed by the standards and ethics of his profession and by the dictates of federal and state law.[12]

■ Although the state may reasonably encourage or discourage an optional procedure with the availability of state Medicaid coverage, the state, and, for that matter, the courts, must not interfere with the physician's course of treatment deemed medically necessary.[13] In the instant action, the Federal defendant's recommendation of psychotherapy as an alternative to surgery should have no bearing on the course of treatment or the conferral of benefits because the attending physician has determined that surgery is medically necessary for his patient.

■ Judgments of medical necessity must be made for individual patients and what may be cosmetic, experimental, palliative, or unnecessary for some, may be deemed essential for another. It follows that the state may not administer a State Plan which irrebuttably denies coverage of any services or procedures within the five required categories,[14] 42 U.S.C. §§ 1396a(a)(13)(B), 1396d(a)(1)–(5), even if the medical care is unavailable within the state, 45 C.F.R. § 248.40(a)(2)(ii). Similarly, the state may not deny any medical service solely because of the "diagnosis, type of illness or condition." 45 C.F.R. § 249.-10(a)(5)(i). The Secretary of H.E.W. may

11. This court is not presented in the Georgia State Plan or its attendant regulations with a requirement for physicians' confirmation of the attending physician's decision that certain procedures or services are medically necessary. The court, therefore, makes no judgment of the propriety of such a requirement in light of the Medicaid mandate, at this time.

12. It must be understood that this court takes no position on the lawful diagnosis or course of treatment determined by these or any future attending physicians.

The veracity of an attending physician's certification of medical necessity in an application for Medicaid reimbursement must be actively enforced by the federal and state governments. The Medicaid statute, 42 U.S.C. § 1396h(a)(1) and (2), provides criminal penalties by fine and/or imprisonment for anyone who "knowingly and willfully makes or causes to be made any false statement or representation of a material fact . . . " in a Medicaid benefits application or Medicaid rights determination. Similar sanctions for false statements are pro-

vided by Ga.Code § 26–2408 (1976). Any perceived inadequacy of these penalties or uncertainty of enforcement must be remedied by the Congress and state legislature in their collective wisdom. Moreover, the integrity of an attending physician's certification of medical necessity reflects on all practitioners and thus should be scrupulously monitored by the medical profession.

13. This in no way denies the states' responsibilities, *inter alia:* to license practitioners; to set reasonable professional fee schedules, 45 C.F.R. § 250.30(b)(3); *to enter into provider agreements,* 45 C.F.R. § 250.21; or to conduct utilization control and review, 45 C.F.R. §§ 250.18, 250.19.

14. *E.g.,* the State Plan may not deny Medicaid benefits for abortions or sex reassignment surgery, but may only deny coverage of nontherapeutic abortions or unnecessary, cosmetic sex reassignment surgery.

not approve any such restrictions in a State Plan as they are inconsistent with the purpose and provisions of the Medicaid program. Georgia's State Plan which flatly denies coverage for transsexual surgery [15] is contrary to the federal mandate. The State Plan, insofar as it irrebuttably denies this coverage, must not be applied by the State defendant and must not be approved by the Federal defendant. Plaintiff's application for Medicaid reimbursement of the proposed surgery, as it conforms to the substance of this order, must be allowed.

The flexibility within Title XIX allows the state to formulate and administer a Medicaid plan to satisfy the conditions and to serve the needs of the state.[16] The inflexibility of the Act requires that benefits for services and procedures within the five required categories, 42 U.S.C. §§ 1396a(a)(13)(B), 1396d(a)(1)–(5), deemed medically necessary by the attending physician, be provided eligible recipients.

Accordingly, Plaintiff's motion to amend the complaint is GRANTED as to substitution and removal of public officers named in their official capacities as follows: State Defendant T. M. "Jim" Parham, as Commissioner of the Georgia Department of Human Resources, is dismissed as a party defendant; State Defendant Sam Thurmond, as Commissioner of the Georgia Department of Medicaid Services, is dismissed as a party defendant and replaced by David Poythress; and Federal defendant F. David Mathews, as Secretary of the U.S. Department of Health, Education, and Welfare, is dismissed as a party defendant and replaced by Joseph A. Califano, Jr. Plaintiff's motion to amend is further GRANTED as to the addition to the damage clause of a claim for attorney's fees under the Civil Rights Attorneys' Fees Awards Act of 1976. Plaintiff's proposed claim for punitive and exemplary damages against State defendant Sam Thurmond, individually, is DISMISSED.

Plaintiff's motion for summary judgment is GRANTED and the Georgia State Medicaid Plan and its attendant regulations insofar as they irrebuttably deny Medicaid benefits for transsexual surgery, which involves procedures within the five required categories of 42 U.S.C. §§ 1396a(a)(13)(B), 1396d(a)(1)–(5), are DECLARED invalid as a violation of plaintiff's federally afforded rights. The State defendant: (1) is ENJOINED from application of the State Medicaid Plan and regulations insofar as they irrebuttably deny Medicaid benefits for transsexual surgery and (2) is ORDERED to approve plaintiff's petition for Medicaid reimbursement of the inpatient hospital and physicians' services related to the proposed surgery. The Federal defendant is ORDERED to disapprove the Georgia State Plan and its attendant regulations insofar as they irrebuttably deny Medicaid coverage for transsexual surgery involving services or procedures within the five required categories of 42 U.S.C. §§ 1396a(a)(13)(B) and 1396d(a)(1)–(5).

IT IS SO ORDERED.

---

**15.** State Medicaid Plan, Attachment 3.1A, Page 2b, Item 51; Policy Manual for Physicians' Services, § 203.5, Item 17(g).

**16.** The state may choose to list presumptively covered or uncovered medical services. However, clear guidance on the availability and procedure for rebutting the presumptions of the list must also be provided. Policy Manual for Physicians' Services, § 200, is insufficient in this regard.