Jane DOE, Individually and on behalf of others similarly situated, Jacob B. Adams, M.D., Lawrence D. Baker, M.D., Charles Butler, M.D., Joel S. Engel, M.D., James M. Freemont, M.D., Steven Gordon, M.D., Otis T. Hammonds, M.D., Henry S. Kahn, M.D., William Mason, M.D., Harold W. Pitts, M.D., Edwin Portman, M.D., Joseph Randall, M.D., and Gerald Rehert, M.D., Individually and on behalf of others similarly situated, Atlanta Center for Reproductive Health, Inc., Atlanta Women's Medical Center, Inc., and Feminist Women's Health Center, Inc., Plaintiffs,

v.

George D. BUSBEE, Governor of the State of Georgia, Richard Millsap, Director of Fiscal Division of the Georgia Department of Administrative Services, David B. Poythress, Commissioner of the Georgia Department of Medical Assistance, Board of Medical Assistance for the State of Georgia, and James E. Barnett, D. Jack Davis, Vivian P. Hartman, and Ronald Tigner, Individually and in their capacities as members of the Board of Medical Assistance for the State of Georgia, and Arthur K. Bolton, Attorney General of the State of Georgia, Defendants.

Civ. A. No. C79–786A.

United States District Court,
N. D. Georgia,
Atlanta Division.

June 5, 1979.

Margie Pitts Hames, Elizabeth J. Appley, Karen O'Connor, Hames, Oakley & Appley, Atlanta, Ga., for plaintiffs.

Arthur K. Bolton, Atty. Gen., Robert S. Stubbs, II, Executive Asst. Atty., Don A. Langham, First Asst. Atty. Gen., Michael J. Bowers, Senior Asst. Atty. Gen., Jefferson James Davis, Staff Atty. Gen., Law Department for the State of Georgia, Atlanta, Ga., for defendants.

## ORDER

HAROLD L. MURPHY, District Judge.

This is a civil action to obtain declaratory and injunctive relief brought pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, the Social Security Act, 42 U.S.C. § 1396 *et seq.*, and the First, Fifth, Ninth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1343. This matter is presently before the Court on plaintiffs' motion for preliminary injunctive relief from the enforcement of the rules promulgated by the Georgia Department of Medical Assistance restricting reimbursement to Medicaid enrollees for medically necessary abortions.

## I

The complaint alleges that plaintiffs Jane Doe[1] and Mary Roe[2] are eligible for medical assistance under Georgia's Medicaid program. Doe and Roe, having been informed that they are pregnant and advised that given their conditions, an abortion is medically necessary, have each expressed a desire to obtain an abortion. However, neither is financially capable of obtaining an abortion without Medicaid reimbursement and neither qualifies for such reimbursement under the present rules promulgated by the Department of Medical Assistance regarding reimbursement for abortions. Plaintiffs Doe and Roe seek to bring this action as representatives of a class consisting of all present and future Medicaid enrollees who are now, or who may become, pregnant and who have decided, or who may decide, with their physicians, to have an abortion and for whom an abortion is "medically necessary", but for whom an abortion is not necessary to prevent death or severe and longlasting consequences for their physical health, or where pregnancy did not result from rape or incest.

Plaintiffs Jacob B. Adams, M.D., Lawrence D. Baker, M.D., Charles Butler, M.D., Joel S. Engel, M.D.,[3] James M. Freemont, M.D., Steven Gordon, M.D., Otis T. Hammonds, M.D., Henry S. Kahn, M.D., William Mason, M.D., Harold W. Pitts, M.D., Edwin Portman, M.D., Joseph Randall, M.D., and Gerald Rehert, M.D. are all physicians who receive reimbursement from the Georgia Medical Assistance Program for medically necessary obstetrical, gynecological, psychiatric and anesthetic services which they individually provide to their Medicaid patients. These plaintiff physicians are seeking to bring this action on their own behalf, on behalf of their patients, and on behalf of all physicians and Medicaid providers who are certified by Georgia's Department of Medical Assistance to obtain reimbursement for the provision of medically necessary services to persons eligible for benefits under the Georgia Medical Assistance Program, and who will perform medically necessary abortions for the plaintiff class of women in accordance with the exercise of their best medical judgment.[4]

Plaintiff Atlanta Center for Reproductive Health, Inc. ("ACRH"), Atlanta Women's Medical Center, Inc. ("AWMC"), and Feminist Women's Health Center, Inc. ("FWHC") are corporations which operate clinics which provide gynecological services, education and counseling, including first trimester abortions for women who are eligible for Medicaid.

Defendant George D. Busbee is the Governor of the State of Georgia. Defendant Richard Millsap is the Director of the Fiscal Division of the Department of Administrative Services for the State of Georgia. Defendant David B. Poythress is the Commissioner of the Georgia Department of Medical Assistance. Defendants D. Jack Davis, James E. Barnett, Vivian P. Hartman and Ronald Tigner are all members of the defendant Board of Medical Assistance, which is empowered to establish the general policy to be followed by the Georgia Department of Medical Assistance and approves all rules adopted by the Department. Defendant Arthur K. Bolton is the Attorney General of the State of Georgia.

At this stage of the action, the plaintiffs seek a preliminary injunction, pursuant to Fed.R.Civ.P. 65, enjoining the defendants, their agents, employees and attorneys from refusing to provide Medicaid reimbursement for the provision of all medi-

1. Pseudonyms have been adopted to preserve the anonymity of the plaintiffs seeking Medicaid funding for their own medically necessary abortions.

2. Plaintiff Roe was added as a named party to this action by an amendment to the complaint, which amendment was filed as a matter of course prior to the filing of any answer to the complaint. Fed.R.Civ.P. 15(a).

3. Dr. Engel voluntarily withdrew as a named plaintiff on May 21, 1979.

4. Both the plaintiff women and the plaintiff group of physicians have moved for certification of their respective classes, but these motions will be addressed by the Court at a later date.

cally necessary abortions. The crux of plaintiffs' argument in support of this injunctive relief is that the rules issued by the Department of Medical Assistance which provide for Medicaid reimbursement for some, but not all medically necessary abortions, violate Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, as well as the First, Fourth, Fifth, Ninth and Fourteenth Amendments to the United States Constitution.[5] Plaintiffs thereby assert a denial of their rights through which it is argued they will suffer irreparable injury unless injunctive relief is granted.

There are four prerequisites which the Court must find are satisfied before granting a preliminary injunction: (1) a substantial likelihood that the plaintiffs will prevail on the merits, (2) a substantial threat that plaintiffs will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury outweighs the threatened harm the injunction may do to the defendants, and (4) that granting the preliminary injunction will not disserve the public interest. *Morgan v. Fletcher*, 518 F.2d 236, 239 (5th Cir. 1975); *Canal Authority of State of Florida v. Calloway*, 489 F.2d 567, 572 (5th Cir. 1974).

## II

In *Beal v. Doe*, 432 U.S. 438, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977), the Supreme Court in holding that a state's refusal to extend Medicaid coverage to nontherapeutic abortions is not inconsistent with Title XIX, stated that "serious statutory questions might be presented if a state medicaid plan excluded necessary medical treatment from its coverage." In evaluating the likelihood that the plaintiffs will prevail on the mer-

its, this Court is squarely faced with this "serious statutory question." Specifically, the issue presented on the merits is whether a state medicaid plan, to the extent that it restricts reimbursement for medically necessary abortions, is inconsistent with Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*

Pursuant to the current rules promulgated by the Department of Medical Assistance of the State of Georgia,[6] Medicaid reimbursement for abortions is available only if one of the following conditions is met:

(1) The life of the mother would be endangered if the fetus were carried to term.

(2) Severe and longlasting physical health damage to the mother would result if the pregnancy were carried to term.

(3) The mother was a victim of rape or incest, and the incident was reported promptly.

In addition:

Written certification, verifying the above conditions will be required before payment can be made. In the case of the mother's life being endangered, written certification of one physician is required. In the case of resulting severe and longlasting health damage, written certification of *two* physicians is required.

In the case of rape or incest, signed documentation from a law enforcement agency or public health service stating that the rape or incest was reported within sixty (60) days of the incident is required.

Billing Procedures and Reimbursement Policies for Physicians Services—Appendix D

---

**5.** As will be seen, this Court finds adequate statutory grounds for granting the relief sought, therefore the Court will not address the constitutional arguments of the parties. *See Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

"It is inappropriate to address constitutional issues without determining whether statutory grounds . . . are dispositive." *Regents of the University of California v. Bakke*, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978) (separate opinion of White, J.).

**6.** Ga.Code Ann. § 99–4603 created the Department of Medical Assistance as an agency of the State of Georgia and authorized it to adopt and administer a State Plan for Medical Assistance in accordance with Title XIX of the Federal Social Security Act of 1935, as amended (Act of July 30, 1965, Pub.Law 89–97, 79 Stat. 343, as amended). It is to this State Plan for Medical Assistance that the Court refers when the Court uses the phrase "Georgia's Medicaid plan."

(revised 12/1/78) (hereinafter cited as Physician's Manual—Appendix D).

As a participating state, Georgia's Medicaid Plan must meet certain minimum requirements as set out in Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq. See Beal v. Doe,* 432 U.S. 438, 441, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977); *White v. Beal,* 555 F.2d 1146, 1149 (3d Cir. 1977); *Rush v. Parham,* 440 F.Supp. 383, 385 (N.D.Ga. 1977). Having determined to extend eligibility for Medicaid benefits to persons defined as "categorically needy," [7] Georgia must provide to eligible persons, as a minimum, the following categories of services:

(1) inpatient hospital services;

(2) outpatient hospital services;

(3) laboratory and x-ray services;

(4) (A) skilled nursing facility services; (B) early and periodic screening and diagnosis for persons under 21 years of age; (C) family planning services and supplies;

(5) physicians services (whether furnished in the office, patient's home, a hospital, skilled nursing facility or elsewhere).

42 U.S.C. §§ 1396a(a)(13)(B) and 1396d(a)(1)–(5).

The regulations promulgated by the Department of Health, Education, and Welfare pursuant to Title XIX, which regulations have the force of law,[8] provide the following additional requirements of a state plan:

(a) The plan must specify the amount and duration of each service that it provides.

(b) Each service must be sufficient in amount, duration, and scope to reasonably achieve its purpose.

(c) (1) The medicaid agency may not deny or reduce the amount, duration, or scope of a required service under §§ 440.210 [for the categorically needy] and 440.220 [for the medically needy] to an otherwise eligible recipient solely because of the diagnosis, type of illness, or condition.

(2) The agency may place appropriate limits on a service based on medical necessity or on utilization control procedures.

42 C.F.R. § 440.230 (1978).

■ In summary, Title XIX and the regulations promulgated thereunder require that, as a minimum, a state plan for medical assistance must provide for all medically necessary services to the categorically needy which fall within the five general categories set out in Title XIX, 42 U.S.C. § 1396d(a)(1)–(5).[9] It is clear that an abor-

---

**7.** *See* 42 C.F.R. §§ 436.700, 436.711 (1978).

**8.** It has been established in a variety of contexts that properly promulgated, substantive agency regulations have the "force and effect of law." *Chrysler Corp. v. Brown,* —— U.S. ——, ——, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979).

**9.** Title XIX does not explicitly mandate that all medically necessary services within the five general categories be provided by a state plan, however, this Court does find such a mandate in the promulgation of 42 C.F.R. § 440.230(c)(2) which provides that a state "may place appropriate limits on a service based on medical necessity." Thus, a state may permissibly discriminate in its provision of services based on degrees of need, but only within that range of degrees of need which exceed the level of medical necessity.

*Preterm, Inc. v. Dukakis,* 591 F.2d 121 (1st Cir. 1979), stops short of holding that all necessary medical services within the five general categories are mandatory and rests its conclusion—that Massachusetts' failure to provide abortion services, except where necessary to prevent the death of the mother or under certain circumstances where the pregnancy resulted from forced rape or incest, is inconsistent with the requirements of Title XIX—on 42 C.F.R. § 440.230(c)(1) which prohibits a denial or reduction in the "amount, duration, or scope of a required service . . . to an otherwise eligible recipient solely because of the diagnosis, type of illness, or condition." This Court agrees with the statement that "[w]hen a state singles out one particular medical condition—here, a medically complicated pregnancy—and restricts treatment for that condition to life and death situations it has . . . crossed the line between permissible discrimination based on degree of need and entered into forbidden discrimination based on medical condition," *Preterm, Inc. v. Dukakis, supra* at 126, except to the extent that it implies that restrictions on medically necessary abortions, as indeed any

tion is a medical procedure which falls within the five general categories set out in Title XIX. Thus, it follows that Georgia's State Plan for Medical Assistance is "inconsistent with the objectives of [Title XIX]," 42 U.S.C. § 1396a(a)(17),[10] where it provides reimbursement for less than all the medically necessary abortions desired by eligible women.

In response to plaintiff's position, the defendants argue that given the nature of the statute creating the Department of Medical Assistance of the State of Georgia and the restrictions on the use of federal funds for abortions contained in the Hyde Amendment, Pub.L.No.95–480, § 210, 92 Stat. 1586 (1978), the Georgia Department of Medical Assistance is precluded from providing reimbursements for abortions except in those circumstances set out in the Physicians Manual—Appendix D (see text, *supra*). Furthermore, the defendants argue that if the Court were to rule in favor of the plaintiffs, the Court would be required to reach a finding that the Hyde Amendment, is unconstitutional, which finding would be improper prior to joining the United States Department of Health, Education, and Welfare ("HEW") and Joseph A. Califano, Secretary of HEW as parties to this action.[11]

The Hyde Amendment in its present form reads as follows: [12]

> *Provided,* that none of the funds provided for in this paragraph shall be used to perform abortions except where the

life of the mother would be endangered if the fetus were carried to term; or except for such medical procedures necessary for the victims of rape or incest, when such rape or incest has been reported promptly to a law enforcement agency or public health service; or except in those instances where severe and long-lasting physical health damage to the mother would result if the pregnancy were carried to term when so determined by two physicians.[13]

Pub.L.95–205, § 101, 91 Stat. 1460 (Dec. 9, 1977).

*Ga.Code Ann.* § 99–4603, the organic statute of the Department of Medical Assistance of the State of Georgia, authorizes the department "to establish such rules and regulations as may be necessary or desirable in order to execute the State plan and to receive the maximum amount of Federal financial participation as is available in expenditures made pursuant to the State plan."

It is the defendants' contention that the regulations promulgated by the Georgia Department of Medical Assistance, restricting reimbursement for abortions to just those instances in which Federal financial participation is authorized under the language of the Hyde Amendment, are compelled by its authorization to maximize Federal financial participation. However, this contention is not explicitly supported by the language of the authorization, which does not limit serv-

---

other service, if such restrictions were the manifestations solely of discrimination based on degree of need, would be permissible. Under the circumstances of the instant case, the Court finds both impermissible discrimination based on degree of need and forbidden discrimination based on medical condition and would reach the conclusion that the denial of medically necessary abortions to eligible persons is inconsistent with Title XIX on either basis.

10. The purpose of Title XIX with which this action is directly concerned is "the purpose of enabling each State, as far as practicable under the conditions in such State, to furnish (1) medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services . . . .. 42 U.S.C. § 1396.

11. The defendants have pending a motion to join these federal parties which the Court will address at a later time.

12. The original Hyde Amendment affecting HEW appropriations for FY 77 restricted the use of federal funds for abortions "except when the life of the mother would be endangered if the fetus were carried to term." Pub.L.94–439, § 209, 90 Stat. 1418 (Sept. 30, 1976).

13. This same language has been incorporated in the Departments of Labor and Health, Education, and Welfare Appropriations Act, 1979, Pub.L.95–480, § 210, 92 Stat. 1586 (Oct. 18, 1978).

ices provided by the State plan to those in which there is Federal financial participation; nor is it implicitly supported by resort to the general scheme by which each state's share of Federal financial participation is computed,[14] absent a showing that reimbursement by the State for medically necessary abortions, outside those instances in which Federal funds are available, would result in the State's loss of federal funds for which it would otherwise qualify.

In support of their argument that a ruling by this Court in favor of the plaintiffs would require a finding that the Hyde Amendment is unconstitutional, the defendants rely on *Preterm, Inc. v. Dukakis,* 591 F.2d 121 (1st Cir. 1979), which held in part that the Hyde Amendment "constituted a substantive policy decision concerning the public funding of abortions which left the states free to fund more abortions than those for which federal funds were made available by the Amendment, but did not require them to do so." *Id.* at 134.[15] From the premise that the Hyde Amendment substantively alters Title XIX, the defendants would argue that Georgia's policy on abortions, as reflected by the Department of Medical Assistance's rules, was not inconsistent with Title XIX.[16]

Alternatively, the defendants argue that given the neutrality of *Ga.Code Ann.* § 99–4603 and the substantive effect of the Hyde Amendment on Title XIX, the conflict between Title XIX and Georgia's Medicaid Plan is nonexistent. Therefore, plaintiffs could only prevail by showing a conflict between Title XIX, as amended by the Hyde Amendment, and the United States Constitution. In other words, to rule for the plaintiffs would require a determination

that the Hyde Amendment was unconstitutional. At this juncture, the defendants do not press any argument in support of the constitutionality of the Hyde Amendment, but rather argue that such a determination would be premature until the joinder of HEW and Secretary Califano as defendants pursuant to Fed.R.Civ.P. 19.[17]

The common premise crucial to the success of each of defendants' arguments is the proposition that the Hyde Amendment substantively alters Title XIX as held in *Preterm, Inc. v. Dukakis,* 591 F.2d 121 (1st Cir. 1979). While this Court concurs in the first portion of the *Preterm* opinion, which holds that Massachusetts' restrictions on abortions were inconsistent with Title XIX, this Court remains unpersuaded by the remainder of that decision with respect to the impact of the Hyde Amendment on Title XIX.

█ In support of its conclusion that the Hyde Amendment substantively affects Title XIX, the *Preterm* court looks to the legislative history of the Amendment, which in this case consists solely of debates and insertions in the Congressional Record. Before it can justify exploring legislative history, however, the *Preterm* court, unable to find that the words of the amendment themselves are unclear,[18] must find that the plain meaning of the amendment produces a result " 'plainly at variance with the policy of the legislation as a whole.' " *United States v. American Trucking Associations, Inc.,* 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1939). This the *Preterm* court does by finding that to construe the terms of the amendment literally "would result in imposing an obligation on the states to fund the

---

**14.** *See* 42 U.S.C. § 1396b.

**15.** The *Preterm* decision has been followed in this respect by the Seventh Circuit in *Zbaraz v. Quern,* 596 F.2d 196 (7th Cir. 1979).

**16.** The defendants have not expressly articulated this argument but the Court presumes its adoption by defendants' reliance on *Preterm, Inc. v. Dukakis,* 591 F.2d 121 (1st Cir. 1979).

**17.** The defendants cite *Woe v. Califano,* 460 F.Supp. 234 (S.D.Ohio 1978), which holds that the Hyde Amendment does not interfere with

certain liberty interests of doctors and patients. The Court also notes that on remand from the Seventh Circuit, a district court has held that the Hyde Amendment violated the Fifth Amendment to the Constitution. *Zbaraz v. Quern,* 596 F.2d 196 (N.D.Ill.1979).

**18.** If the words of a statute are clear, there is no need to resort to extrinsic aids of statutory construction. *See TVA v. Hill,* 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978).

total cost of non-Hyde Amendment therapeutic abortions, a result not consonant with the basic policy of the Medicaid system under which the federal government participates in the funding of medical services provided by the states." *Preterm, Inc. v. Dukakis,* 591 F.2d 121, 128 (1st Cir. 1979).

This Court has difficulties with this conclusion. To begin with, it is to take too narrow a view of the overall Medicaid scheme to find that any obligations are "imposed" on states where their participation in the Medicaid program is voluntary. It must be conceded that the minimum requirements for state plans set out in Title XIX and discussed above represent "obligations", but they are obligations which each state chooses to accept when it exercises the option of participating in the Medicaid program. Indeed the very issue before the Court in the instant case is whether the funding of all medically necessary abortions is one of those obligations.

Additionally the *Preterm* court seems to confuse the basic policy of Title XIX, the enabling of each state to furnish medical assistance to the needy, with the basic mechanism by which Congress seeks to effect that policy, the provision of federal funds on a cooperative basis with participating states. But even so, it is not the case, nor is it required by Title XIX, that there be federal financial participation in every service necessarily provided by a participating state. Indeed, in the instant case it has been stipulated that the State of Georgia provides 100% of the premiums for the insurance program established by part B of Title XVIII, 42 U.S.C. § 1395, *et seq.,* on behalf of persons simultaneously covered by Medicare and Medicaid. *See* 42 U.S.C. § 1396b(b)(1).[19]

The Court notes further that, in its discourse on statutory construction, the Supreme Court in *United States v. American Trucking Associations, Inc.,* 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940), on which case the *Preterm* court relies, states that "[a] few words of general connotation appearing in the text of statutes should not be given a wide meaning, *contrary to a settled policy, 'excepting as a different purpose is plainly shown'* ". *Id.* at 544, 60 S.Ct. at 1064. (emphasis added) In that case the "settled policy" was a reference to a settled practice of Congress. The *Preterm* court gives a "wide meaning" to the clear words of the Hyde Amendment contrary to the recognized and settled policy of Congress against legislating in an appropriations context and does so in the absence of any "plain showing" of a different purpose. In so doing, the *Preterm* court fails to follow consistently the precepts of the very case on which it relies in order to justify looking to the legislative history of the Hyde Amendment. This failure seriously undermines the force of that court's position in that regard.[20]

However, even assuming that exploration of the legislative history of the Hyde Amendment were justified, this Court does not find support therein for the proposition that the Hyde Amendment represented a clear, substantive limitation on Title XIX. Without repeating in detail each of the statements considered by the *Preterm* court, this Court finds that the statements made by the proponents of the amendment expressed their regret that their efforts to change substantive law on abortions languished in committee and their hopes that restrictions on the use of federal funds

---

**19.** While the defendants argue that the State of Georgia pays these premiums in order to receive the direct benefit of increased federal funding which the state would otherwise lose, the requirement to pay these premiums is no less an "obligation" in the *Preterm* sense than would be requiring the states to fund the total cost of non-Hyde Amendment therapeutic abortions. All that could be said is that in the latter case, the state benefits less directly.

**20.** The Court notes one further distinction between the facts of *U. S. v. Amer. Trucking Ass'ns, Inc.,* 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940) and those of the instant case. In the former case, the Court was concerned with the meaning of the word "employee" which it found was not a "word of art" having a clear and definite meaning. *Id.* at 545, 60 S.Ct. 1059. In the instant case, even the majority of the *Preterm* court recognizes the clarity of the language in the Hyde Amendment.

would accomplish a "working of their will", 123 Cong.Rec.H. 6083 (June 17, 1977) (Rep. Hyde), while those statements made by the opponents of the amendment expressed predictions of the practical effect of the amendment, which in their opinion would be dismal. 123 Cong.Rec. at S. 11031 (June 29, 1977) (Sen. Packwood).

The *Preterm* court's reliance on these statements effectively makes self-fulfilling prophecies of them. While it may well be manifest that the Hyde Amendment was "calculated to stop the provision of abortional services from public funds", *McRae v. Matthews,* 421 F.Supp. 533, 538 (E.D.N.Y. 1976), it does not follow that this was necessarily accomplished by the amendment's passage. For a court to say that the plain words of a statute mean something other than what they ordinarily mean because members of Congress have said they should, or would, have such an effect is for a court to abdicate its responsibility under our federal system.[21]

In summary, the Court finds the language of the Hyde Amendment unambiguous, obviating resort to the legislative history for its construction. The Hyde Amendment on its face clearly operates merely to restrict the use of federal funds for abortions. Furthermore, a review of that legislative history, as presented in *Preterm, Inc. v. Dukakis,* 591 F.2d 121 (1st Cir. 1979), does not compel the conclusion that the amendment was intended to amend the substantive provisions of Title XIX. For these reasons, the Court concludes that the Hyde Amendment does not substantively limit Title XIX. Being contingent on a contrary finding by the Court, defendants' arguments against the merits of plaintiffs' motion fail.

In conclusion, the Court finds, on the basis of the apparent merit of the plaintiffs' arguments and the lack of merit of the defendants' position, that there is a substantial likelihood that the plaintiffs will prevail on the merits.

### III

The defendants have not argued the absence of irreparable injury [22] or that the threatened injury outweighs whatever threatened harm the injunction may do to the defendants. It is conceded that the abortions sought by plaintiffs Doe and Roe are medically necessary due to their age, health, and familial circumstances.

The Court finds a substantial threat that plaintiffs Roe and Doe will suffer irreparable injury for which there is no adequate legal remedy if the injunction is not granted, and further that the balance of harms weighs in favor of the plaintiffs.

### IV

The defendants argue that granting plaintiffs the injunctive relief they seek would disserve the public interest by channeling funds, which would otherwise be available to all Medicaid recipients, to benefit the relative few who need medically necessary abortions. However, this argument fails in light of the fact that Medicaid payments are made in support of prenatal and childbirth services and in light of the stipulations in the instant case that the cost of childbirth exceeds the cost of abortion, and indeed, that the cost to the state of a childbirth, for which the state receives federal financial participation, exceeds the cost of a fully state-funded abortion.

The Court finds that the grant of preliminary injunctive relief to the plaintiffs will not disserve the public interest.

---

21. "It is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison,* 1 Cranch 137, 176, 2 L.Ed. 60 (1803). "The interpretation of the meaning of statutes, as applied to justiciable controversies, is exclusively a judicial function." *U. S. v. Amer. Trucking Ass'ns, Inc.,* 310 U.S. 534, 544, 60 S.Ct. 1059, 1064, 84 L.Ed. 1345 (1940).

22. The issue of imminence was made less crucial at the hearing on a TRO in this case by the defendants' agreement to reimburse plaintiffs should they have an abortion prior to the Court's grant of injunctive relief, and of course, conditioned on such grant.

V

Having found that all the prerequisites to the grant of preliminary injunctive relief have been met in this action, the Court will enter a preliminary injunction in favor of the named plaintiffs.

ACCORDINGLY, the defendants, their agents, employees and attorneys are enjoined from refusing to provide Medicaid reimbursements for the medically necessary abortions of plaintiffs Doe and Roe.

SO ORDERED, this the 4th day of June, 1979.