Wanda WOE, Individually and on Behalf of all others similarly situated, Walter Thomas, M.D., Alfred B. Jefferson, M.D., Robert Hallet, M.D., and Leopoldo L. Enrile, M.D., and the Founder's Clinic, Inc., Plaintiffs,

v.

Joseph A. CALIFANO, Secretary, United States Department of Health, Education & Welfare, Defendant.

No. C-2-76-755.

United States District Court,
S. D. Ohio, E. D.

Jan. 9, 1978.

Stanley K. Laughlin, Jr., Louis A. Jacobs, Jerome E. Friedman, Columbus, Ohio, for plaintiffs.

Rebecca L. Ross, Dept. of Justice, Washington, D. C., for defendant.

## OPINION AND ORDER

DUNCAN, District Judge.

When it made appropriations for the Department of Health, Education and Welfare for the fiscal year ending September 30, 1977, including appropriations to cover federal Medicaid reimbursements to the states, Congress added the "Hyde Amendment" as § 209 of the Appropriations Act, Pub.L. 94-439. The Hyde Amendment provides,

> None of the funds contained in this Act shall be used to perform abortions except where the life of the mother would be endangered if the fetus were carried to term.

Alleging deprivation of constitutional rights the plaintiffs request this Court to permanently enjoin the enforcement of the Hyde Amendment. The matter is before the Court on the plaintiffs' motion for summary judgment and the defendant's motion to dismiss.

In its June 20, 1977, decision upholding a Connecticut abortion decision against constitutional attack, *Maher v. Roe,* 432 U.S. 464, 97 S.Ct. 2376, 53 L.Ed.2d 484, the Supreme Court distinguished state action prohibiting abortions, as was involved in *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), from state action "encourag[ing] . . . an alternative activity [i. e., childbirth], consonant with legislative policy." The Supreme Court stated:

> There is a basic difference between direct state interference with the protected activity and state encouragement of an alternative activity consonant with legislative policy. Constitutional concerns are greatest when the state attempts to impose its will by force of law; the state's power to encourage actions deemed to be in the public interest is necessarily far broader. *Maher v. Roe, supra* (footnote omitted).

The Court went on to say that

> When an issue involves policy choices as sensitive as those implicated by public funding of nontherapeutic abortions, the appropriate forum for their resolution in a democracy is the legislature.

The Hyde Amendment does not permit federal funding of many "therapeutic" abortions, if those are defined, as Connecticut has defined them, to include abortions performed to preserve the physical or mental health of the pregnant woman. The Hyde Amendment permits federal funding only if "the life of the mother would be endangered if the fetus were carried to term." The Attorney General of the United States has formally interpreted the Hyde Amendment to prohibit federal funding even if the pregnancy was a product of rape or incest.

In *Maher v. Roe, supra,* and *Poelker v. Doe,* 432 U.S. 519, 97 S.Ct. 2391, 53 L.Ed.2d 528 (1977), the Supreme Court limited its holding to the following: (1) that the provisions of the Social Security Act did not require a state, as a condition of participation, to include the funding of elective, non-therapeutic abortions in its Medicaid program, and (2) the equal protection clause did not require a state that elected to fund expenses incidental to childbirth also to provide funding for elective and non-therapeutic abortions. The Court did not consider, plaintiffs contend, the circumstance presently before this Court where federal funding is withheld from those seeking abortions necessary to protect their health and well-being.

■ I am not convinced that the Supreme Court would invalidate the Hyde Amendment. It may be true that the amendment may prevent an indigent woman from obtaining a therapeutic abortion. The issue, however, is whether the government's funding decisions impair the constitutionally protected interest in making certain kinds of important decisions free from government compulsion. Speaking of a Connecticut regulation which limited state Medicaid benefits for the first trimester abortions to those that were "medically necessary," the Court in *Maher v. Roe, supra,* said:

> An indigent woman who desires an abortion suffers no disadvantage as a consequence of Connecticut's decision to fund childbirth; she continues as before to be dependent upon private sources for the service she desires. The state may have made childbirth a more attractive alternative, thereby influencing the woman's decision, but it has imposed no restriction on access to abortions that was not already there. The indigency that may make it difficult—and in some cases, perhaps, impossible—for some women to have abortions is neither created nor in any way affected by the Connecticut regulation.

There is a basic difference between direct state interference with protected activity and state encouragement of an alternative activity consonant with legislative policy. Where a state merely encourages the alternative activity through the allocation of public funds, there is no "impairment" of federal constitutional rights. Accord, *Poelker v. Doe, supra.* Applying what I

understand to be the principles announced by the Supreme Court to the case at hand, I conclude that the Hyde Amendment places no constitutionally impermissible obstacles in the pregnant woman's path to an abortion.

In *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), the Court considered the constitutionality of a state law which required that two doctors concur, after independent examinations, with the attending physician's decision to perform an abortion. The Court found the statute unconstitutional, holding that the requirement that two doctors concur in the decision interfered with the doctor's right to practice medicine and the patient's right to consult with her physician without interference by the government. In *Beal v. Doe,* 432 U.S. 438, 97 S.Ct. 2366, 53 L.Ed.2d 464, the Court examined a feature of the Pennsylvania Medicaid program in which financial assistance was not provided for medically necessary abortions unless two physicians, in addition to the attending physician, had examined the patient and had concurred in writing that the abortion was medically necessary. Because the Court was unable to determine whether such a requirement interfered with the attending physician's medical judgment, the case was remanded to the District Court to be considered in light of *Doe v. Bolton.*

Relying on these cases, plaintiff argues that the Hyde Amendment standard of "life endangering" is an interference with a doctor's right to practice and the patient's right to receive treatment. A physician ordinarily utilizes his professional skill and judgment to preserve the health of his patients, and it is professionally repugnant to him to withhold treatment until the patient is near death. The Hyde Amendment, plaintiffs argue, compels a physician to act against his best professional judgment.

■ The Hyde Amendment does not interfere with the physician's right to practice medicine or the patient's right to consult with her physician. Unlike the *Doe v. Bolton* factual situation, the amendment does not interfere with a doctor's decision to perform an abortion or a woman's right to obtain an abortion. It provides the conditions under which federal funds can be used to reimburse a doctor for an abortion. It requires only that a medical doctor certify in good faith that the mother's life will be endangered if the fetus is carried to term. This is a professional judgment that can be exercised in light of all factors—physical, emotional, psychological, familial, and age—relevant to the well-being of the patient. Only one physician's opinion is necessary in order to obtain reimbursement.

Plaintiffs advocate that joining of the need for a medically indicated therapeutic abortion but not necessary to save the mother's life with the indigency of a pregnant woman impales the constitutionally protected right of the woman to necessary treatment from her physician. Obviously, the Hyde Amendment does not prevent a physician from advising his patient to undergo any medically indicated abortion. The Supreme Court fully recognizing that indigency may make it impossible for some women to abide their physician's advice however has not taken the second step and viewed this practical dilemma sufficiently weighty to foreclose legislative action to encourage childbirth. To be sure there are fact differences between the *Poelker* case and the instant case, but this Court finds no significant difference in constitutional principle regarding a physician's right to practice and a patient's right to his services. Under the law of the *Poelker* case certain medically indicated abortions were not permitted in St. Louis city-owned hospitals while abortions necessary to save the mother from grave physiological injury or death were. While this Court appreciates the fact that the Hyde Amendment is more restrictive than the St. Louis policy, a distinguishing constitutional factor is absent.

In *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), *Davis v. Beason,* 133 U.S. 333, 10 S.Ct. 299, 33 L.Ed. 637 (1890) and *Reynolds v. United States,* 98 U.S. 145, 25 L.Ed. 244 (1878) the Supreme Court held that a law was not an unconstitutional establishment of a religion merely because it may happen to encourage policies

which coincide with the tenets of some or all religions. However, in each of the above cases there was a strong secular interest which the legislature sought to advance. Thus, in *McGowan,* Sunday closing laws advanced the state interest of guaranteeing a day free from work for every working citizen of the state and simply because the day coincided with the Christian sabbath of majority sects did not make it an establishment of religion. In *Reynolds* and *Davis,* laws against polygamy served the state interest of preserving the family unit and simply because the laws coincided with majority religious views did not make them an establishment of religion.

■ Relying upon these authorities, plaintiffs argue that the Hyde Amendment constitutes an establishment of a religion in violation of the First Amendment to the Constitution. The only interest promoted by the Hyde Amendment is the interest in live birth after the woman is pregnated. That a pregnancy should not be terminated once it has begun, plaintiffs continue, is not a secular interest but a religious one based on the metaphysical doctrine that life begins at conception. This is a sectarian religious doctrine, plaintiffs conclude, that the government has no business promoting through its welfare policies.

The Court finds the plaintiffs' argument unpersuasive. The Hyde Amendment promotes the secular interest of encouraging childbirth and protecting the potential life of the fetus, *Maher, supra.* These interests cut across many religious lines as do bans against murder or polygamy.

In addition to the arguments considered above, plaintiffs contend the Hyde Amendment violates the Tenth and Eighth Amendment to the Constitution. The Court rejects these arguments.

The Court finds that there is no genuine issue as to material fact. Having considered the arguments of record, this Court holds that plaintiffs are not entitled to judgment as a matter of law. Inasmuch as the defendant presents matters outside the pleadings in his motion to dismiss, the motion is treated as one for summary judgment. The parties have been given reasonable opportunity to present all material pertinent to a Rule 56 motion. The defendant's motion is accordingly granted. The Clerk will enter judgment for the defendant.