PLANNED PARENTHOOD AFFILI-
ATES OF OHIO et al., Plaintiffs,

v.

James A. RHODES et al., Defendants.

No C-2-79-687.

United States District Court,
S. D. Ohio, E. D.

Sept. 12, 1979.

Louis A. Jacobs, Columbus, Ohio, Janet Benshoof, New York City, Bruce A. Campbell, Columbus, Ohio, for plaintiffs.

James R. Rishel, Thomas W. Hess, Thomas V. Martin, Columbus, Ohio, for defendants.

## OPINION AND ORDER

KINNEARY, District Judge.

This matter is before the Court on the motion of the plaintiffs for a preliminary injunction. The plaintiffs in this action are six Planned Parenthood agencies, a rape victim counseling service, two family planning agencies, a doctor and a counselor. They seek an order preliminarily enjoining the governor, auditor, treasurer, and director of the Department of Public Welfare of the State of Ohio from enforcing or otherwise implementing Section 210 of House Bill 204, the 1979–80 biennial budget for the State of Ohio [hereinafter the Meshel amendment] which provides as follows:

SECTION 210. No governmental funds, from whatever source and whether held in trust or otherwise by the government, and no federal funds passing through the state treasury or any state agency, shall

be utilized by any agency of the state or of any political subdivision of the state, and no governmental assistance shall be granted for or to any person, *for performing, promoting, or assisting another in the performance* of an abortion unless one of the following applies:

(A) Two physicians have signed written statements indicating that abortion is *medically necessary to prevent the death of the mother*; or

(B) The pregnancy is the result of rape as defined in section 2907.02 of the Revised Code, and the incident is reported by the victim to a valid law enforcement agency or public health agency within forty-eight hours after the incident occurs, unless the victim is physically unable to report the rape, in which case the report shall be made within forty-eight hours after the victim becomes physically able to report the rape and such a report is accompanied by a signed statement by two physicians certifying that, in their professional opinion, the victim was not previously physically able to report the rape; or

(C) The pregnancy is the result of incest, but only if the incident and relative are reported by the victim to a valid law enforcement agency or public health agency prior to the abortion.

Complaint, Ex. A [emphasis added].

The plaintiffs assert that the Meshel amendment and the underlying Ohio State

Plan which it superseded [1] are unconstitutional on a number of grounds. For purposes of the motion for a preliminary injunction, however, the plaintiffs rely only on the Supremacy Clause, *U.S.Const.*, art. VI, cl. 2. They maintain that Ohio's refusal to pay for less than all medically necessary abortions performed on qualified Medicaid recipients and the refusal to pay for counseling in connection with such abortions violates various titles of the federal Social Security Act, 42 U.S.C. §§ 601, et seq. (Title IV); 42 U.S.C. §§ 701, et seq. (Title V); 42 U.S.C. §§ 1396, et seq. (Title XIX); 42 U.S.C. §§ 1397, et seq. (Title XX); and the Public Health Service Act, 42 U.S.C. §§ 300, et seq. (Title X).

■ By agreement of the parties, this matter has been submitted on the affidavits supplied by the plaintiff, the affidavit supplied by the defendant and the oral argument and brief of the parties.[2] Pursuant to Rule 52, F.R.C.P., the Court makes the following findings of fact and conclusions of law.

### *Findings of Fact* [3]

The Meshel amendment, quoted above, became effective on August 1, 1979 as part of the 1979–80 biennial budget for the State of Ohio. It was an amendment or "rider" to an appropriations bill which was passed without debate or public hearing. It sub-

---

**1.** In its Medical Assistance Letter dated January 5, 1978, the Ohio Department of Public Welfare notified all physicians, hospitals, ambulatory health care clinics and the directors of county welfare departments that reimbursement for abortion would be limited to two situations:

> Where the life of the mother would be endangered if the fetus were carried to term. Where severe and long-lasting physical health damage to the mother would result if the pregnancy were carried to term, when so determined by two physicians.

Complaint, Ex. B.

**2.** Rule 65(a), F.R.C.P., does not require the presentation of oral testimony in all circumstances before preliminary relief may be granted. E. g., *Ross-Whitney Corp. v. Smith Kline & French Laboratories*, 207 F.2d 190 (CA 9, 1953). In

this case, the underlying facts are not sharply disputed, although the inferences and legal conclusions to be drawn from those facts certainly are. In addition, the defendants have agreed that the issue before the Court is essentially one of law, and they chose not to present live testimony at the hearing on the motion. Under these circumstances, the Court may properly rely on the undisputed evidence before it. *See Scott & Fetzer Co. v. McCarty*, 450 F.Supp. 274 (N.D.Ohio 1977).

**3.** The findings of fact in this section of the opinion shall be brief due to the time constraints imposed by the need for prompt disposition of any motion which alleges irreparable harm. Other facts upon which the Court has relied in reaching its conclusions of law shall be referenced as they appear in the discussion.

stantially limits the expenditure of any state funds for the performance of abortion. It also largely prohibits the use of state funds for the promotion of abortions or assistance in the performance of abortions.

The underlying Ohio State Plan (M.A.L. 71) also limits the use of funds for abortion. M.A.L. 71 was issued by the defendant director of the Ohio Department of Public Welfare in January of 1978.

The plaintiff Planned Parenthood Affiliates of Ohio, Inc. is a clearinghouse for medical and legal information for various local Planned Parenthood agencies. The five local Planned Parenthood agencies all supply family planning services including counseling and referrals. Only one of the Planned Parenthood agencies provides abortion services as well.

The plaintiff Cleveland Rape Crisis Center, Inc. provides counseling and referrals for rape victims, but does not perform abortions. Northwest Women's Center, Inc. of Columbus, Ohio provides counseling and performs abortions, as does plaintiff Preterm Cleveland, Inc.

The plaintiff Lawrence Levy is a licensed physician who provides to his patients all medically necessary gynecological and obstetrical services. The plaintiff Susan Momeyer is the Executive Director of the plaintiff Planned Parenthood Association of Butler County, Inc. where she has directed all pregnancy counseling since 1975.

The affidavits and attachments submitted by the plaintiffs establish that, since the passage of the federal Hyde amendment and the subsequent institution of the Ohio State Plan, the number of publicly funded abortions in Ohio has been drastically reduced. This has been so even though the Ohio State Plan permits abortion reimbursement when two doctors certify that "severe and long-lasting health damage" may result. The Meshel amendment is far more restrictive and the unchallenged expert affidavits of the plaintiffs uniformly predict that the number of publicly funded abortions in Ohio will inevitably fall virtually to zero.

There are many medical conditions falling between those which result in life-saving and purely elective abortions. Natural limitations on the present state of the art of medicine prevent, in all but the extreme case, a medically valid prediction of death. The affidavits make clear that the medical profession would not approve as "medically necessary" an abortion desired to avoid "health problems associated with normal pregnancy (such as nausea, water retention, sleeplessness, lower back problems, contracting of organs . . .)," Dr. Sanders' Affidavit, ¶ 7. Nor would the common desire to avoid social stigma or the inconvenience of child rearing justify an abortion as "medically necessary."

Nonetheless, there are numerous medical conditions which might make a non-life-saving abortion medically necessary. Pregnancy can often result in serious physical health damage to the very young and the very old. Other conditions such as cancer, drug addiction, epilepsy or genetic afflictions may create a grave physical risk to the pregnant woman.

Mental health problems may exist as well. Physicians considering various factors such as age, family size, income and prior psychological history may conclude that an abortion is medically necessary to preserve the mental health of the mother.

The affidavits further indicate that the unavailability of funding has caused many poor women to forego medically necessary abortions. Some carry the pregnancy to term, risking severe and potentially permanent injury to their physical or mental health. Others attempt to self-abort, to obtain illegal abortions, or to finance abortions with moneys otherwise necessary for subsistence.

Rape and incest victims, in the opinion of the expert affidavits, will almost never meet the stringent requirements of the Meshel amendment. As a result many will carry their resulting pregnancies to term.

The ultimate conclusion of the experts in this case is that the resulting decrease in the number of poor women who obtain

medically necessary abortions which are safe and legal will cause an increase in maternal mortality among this group.

## Discussion

This Court is aware, of course, that the issue of abortion is one of the most sharply and emotionally debated questions of our time. The making of non-constitutional value judgments, however, is not the proper function of the life-tenured members of the federal judiciary. The issues in this case are narrowly drawn, and simply involve a comparison of the requirements of federal and state statutes. This inquiry is made, and this decision is rendered in the firm belief that nothing could be less relevant to these legal issues than the Court's personal view of the sanctity of fetal life or the propriety of governmental intrusion in the most private of a woman's decisions.

■ In determining whether a preliminary injunction should issue to enjoin the enforcement or implementation of the Meshel amendment and M.A.L. 71, the Court must decide four issues in the plaintiffs' favor:

(a) Whether the [plaintiff has] shown a strong or substantial likelihood of success on the merits.

(b) Whether the [plaintiff has] shown irreparable injury.

(c) Whether the issuance of a preliminary injunction would cause substantial harm to others.

(d) Whether the public interest would be served by issuing a preliminary injunction.

*Mason County Medical Ass'n. v. Knebel*, 563 F.2d 256, 261 (CA 6, 1977).

## I. Probability of Success on the Merits

The plaintiffs attack Ohio's restrictions on abortion funding (for purposes of this motion) on two grounds. First, it is alleged that the refusal to reimburse the performance of medically necessary abortions for the "categorically needy" violates Title XIX of the Social Security Act (Medicaid). Second, it is alleged that the prohibition of "promoting" or "assisting" abortions in the

Meshel amendment violates Titles IV, V, XIX and XX of the Social Security Act and Title X of the Public Health Service Act.

A. *Jurisdiction.* The plaintiffs cannot succeed on these claims if the Court does not have jurisdiction to hear them. The defendants challenge the Court's jurisdiction, citing the recent holding in *Chapman v. Houston Welfare Rights Org.*, —— U.S. ——, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), that Supremacy Clause claims brought to vindicate rights created by the Social Security Act are not cognizable in the district court by virtue of 28 U.S.C. § 1343. The defendants further allege that the plaintiffs' constitutional claims are too insubstantial to create jurisdiction under 28 U.S.C. § 1343, and that the plaintiffs have not "established" that their claims are in excess of $10,000.00 as required by 28 U.S.C. § 1331.

■ When the jurisdiction of the Court is challenged, the burden is on the plaintiff to set forth specific facts to demonstrate the Court's jurisdiction. *Garrett v. Ruth Originals Corp.*, 456 F.Supp. 376, 378 (S.D. Ohio 1978). If the defendant supplies affidavits, the plaintiff may not rest solely on the allegations of the complaint. *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929–30 (CA 6, 1974). Here, the defendants have not supplied affidavits or other proof to attack the Court's jurisdiction, while the plaintiffs' complaint alleges specifically facts sufficient to establish jurisdiction which are in turn supported by affidavits.

With respect to dollar amount under 28 U.S.C. § 1331, the defendants asserted at oral argument that the plaintiffs performed so few publicly reimbursed abortions immediately prior to the Meshel amendment's passage, that the loss of these few dollars would be less than $10,000.00. The plaintiffs, however, challenge the Ohio State Plan as well as the Meshel amendment. The former has been in effect since December of 1977. The plaintiffs have established that Preterm Cleveland, Inc., for example, performed some one thousand Medicaid funded abortions during 1976. In addition,

nearly all of the plaintiffs receive far more than $10,000.00 per year under various federal programs such as Title X of the Public Health Service Act, which they allege may be lost if they comply with the allegedly unconstitutional strictures of the Meshel amendment. The plaintiffs have therefore established jurisdiction under 28 U.S.C. § 1331 with regard to their statutory claims.

■, The Court has jurisdiction of the plaintiffs' constitutional claims under both sections 1331 and 1343.[4] The defendants maintain that the constitutional claims are insufficient to confer jurisdiction, citing *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). Without passing on the ultimate merit of those constitutional claims, the Court disagrees. In *Hagans, supra*, the Supreme Court observed that "federal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit.'" *Id.* at 536, 94 S.Ct. at 1379 (quoting *Newburyport Water Co. v. Newburyport*, 193 U.S. 561, 579, 24 S.Ct. 553, 48 L.Ed. 795 (1904)). The claim is sufficiently insubstantial "only if prior decisions inescapably render the claims frivolous." *Id.* at 538, 94 S.Ct. at 1379.

The plaintiffs' equal protection challenge to the Meshel amendment, if without merit, is not as frivolous as *Hagans* requires. In fact, the same equal protection challenge has been found to be meritorious by at least one district court as to a funding restriction less severe than the Meshel amendment. *Zbaraz v. Quern*, 469 F.Supp. 1212 (N.D.Ill. 1979). The Court in that case found, under minimal equal protection scrutiny, that the state had no legitimate interest in promoting the health of a non-viable fetus at the expense of the health of the mother. *Id.* at 1218, 1219 and 1220. This Court is unaware of any case in which the Supreme Court or the Court of Appeals for the Sixth Circuit has treated this issue directly. The

Court cannot, therefore, consider this claim to be wholly frivolous. Jurisdiction thus exists under 28 U.S.C. § 1343.

■ Finally, defendants argue that the plaintiffs should either be barred by res judicata or collaterally estopped from asserting their constitutional claims by this Court's decision in *Woe v. Califano*, 460 F.Supp. 234 (S.D.Ohio 1978) which upheld the constitutionality of the 1977 version of the federal Hyde amendment. It is alleged that the plaintiffs here were members of the classes certified in *Woe*. Assuming this to be true, the plaintiffs presently challenge a different statute which is more restrictive than the Hyde amendment. It is arguable that Judge Duncan gave a broad interpretation to the concept of life endangerment in *Woe* and it is clear that the state's interest in promoting non-viable fetal life was not treated explicitly. The plaintiffs are not, therefore, foreclosed by *Woe* from attacking the Meshel amendment on constitutional grounds.

B. *Performance of Medically Necessary Abortions.* The plaintiff's position, stated briefly, is that Title XIX of the Social Security Act requires states to fund all necessary medical services for the "categorically needy", and that a medically necessary abortion is one such service. This claim was foreseen by the Supreme Court when it upheld the right of a state to refuse to fund purely elective (i. e. nontherapeutic) abortions, but observed that "serious statutory questions might be presented if a state medicaid plan excluded necessary medical treatment from its coverage." *Beal v. Doe*, 432 U.S. 438, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977).

■ Ohio is not required to participate in the medicaid program established in Title XIX. Because it has chosen to do so, however, it must meet the requirements established by "federal statutory and administrative guidelines" *T__ H__ v. Jones*, 425 F.Supp. 873, 877 (D.C.Utah 1975), *affirmed*

---

**4.** Although the constitutional claims other than the Supremacy Clause claim are not considered on their merits in the decision whether to grant

injunctive relief, they must be considered briefly in this section solely with respect to jurisdiction.

*in part*, 425 U.S. 986, 96 S.Ct. 2195, 48 L.Ed.2d 811 (1976); *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); *see Beal v. Doe*, 432 U.S. 438, 441, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977).

The opening section of Title XIX, 42 U.S.C. § 1396, provides as follows:

For the purpose of enabling each State, *as far as practicable* under the conditions of such State, to furnish (1) medical assistance on behalf of families with dependent children and of aged, blind, or disabled *individuals, whose income and resources are insufficient to meet the costs of necessary medical services*, and (2) rehabilitation . . ., there is hereby authorized to be appropriated . . . [Emphasis added.]

Section 1396a requires that a state plan provide medical services for the "categorically needy," [5] in five general categories:

1. Inpatient hospital services.

2. Outpatient hospital services.

3. Laboratory and x-ray services.

4. (a) Skilled nursing facility services. (b) Early and periodic screening and diagnosis for persons under 21 years of age. (c) Family planning services and supplies.

5. Physicians services (whether furnished in the office, patient's home, a hospital, skilled nursing facility or elsewhere).

42 U.S.C. §§ 1396a(a)(13)(B) and 1396d(a)(1)–(5).

 In addition, the Department of Health, Education and Welfare [HEW] has promulgated regulations pursuant to Title XIX which amplify these requirements. There has been no challenge to the validity of any HEW regulation in this action, nor can the Court perceive a basis for such a challenge. It is axiomatic that properly promulgated agency regulations have the "force and effect of law." *Chrysler Corp. v. Brown*, 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979). In *Preterm, Inc. v. Dukakis*, 591 F.2d 121 (CA 1, 1979),

the First Circuit Court of Appeals found that 42 C.F.R. § 440.230 (1978) has the force of law with respect to Title XIX. *Id.* at 125–26. Section 440.230 establishes further requirements for a state plan:

(a) The plan must specify the amount and duration of each service that it provides.

(b) Each service must be sufficient in amount, duration, and scope to reasonably achieve its purpose.

(c) (1) The medicaid agency may not deny or reduce the amount, duration, or scope of a required service under §§ 440.210 [for the categorically needy] and 440.220 [for the medically needy] to an otherwise eligible recipient *solely because of the diagnosis, type of illness, or condition.*

(2) The agency may place appropriate limits on a service based on medical necessity or on utilization control procedures.

42 C.F.R. § 440.230 (1978) [emphasis added].

Numerous courts have considered the issue now before the Court. Virtually all have ruled that state limits on the funding of medically necessary abortions conflict with the language and regulations of Title XIX. *See e. g., Emma G. v. Edwards*, No. 77–1342 (E.D.La., November 27, 1978), *appeal pending*, No. 79–1144 (CA 5, filed December 22, 1978) and cases cited therein. Some courts have held that a state plan must provide *all* medically necessary services without limit, relying largely on the phrase "necessary medical services" in § 1396 and on 42 C.F.R. § 440.230(c)(2) which is viewed as forbidding a state to place limits below a floor of "medical necessity." *Doe v. Busbee*, 471 F.Supp. 1326 at 1330 n. 9 (N.D.Ga.1979). Other courts have rejected the interpretation which would require states to provide unlimited services within the five categories deemed by a physician to be "medically necessary," but have nonetheless found state limitations on medically necessary abortions to constitute impermissible discrimination based upon "di-

5. *See* 42 C.F.R. §§ 436.700, 436.711 (1978).

agnosis, type of illness, or condition" which is forbidden by 42 C.F.R. § 440.230. *Preterm, Inc. v. Dukakis, supra,* 591 F.2d at 126.

■■■■ The Court agrees that the general flexibility envisioned by Congress in the establishment of state medicaid plans does not mean that the states are free to violate express HEW regulations which have the force of law. Whether adopting the narrower view of the *Preterm* court, or the more expansive view of the *Busbee* court, the plaintiffs have shown a strong or substantial likelihood that Ohio's state plan, as modified by the Meshel amendment and M.A.L. 71, is not "consistent with the objectives of [Title XIX]." 42 U.S.C. § 1396a(a)(17).[6]

Despite similar findings, however, not all courts have required states to fund all medically necessary abortions. Although the majority of courts have rejected the argument, at least three have found that the states' obligation to fund abortions extends only to those abortions for which federal funds have been appropriated pursuant to the federal Hyde amendment. The question for this Court is whether, assuming the other requirements for injunctive relief are met in this case, the state should be required to pay for all medically necessary abortions, or only those abortions for which federal dollars are available under the Hyde amendment. The more restrictive Meshel amendment would fall in either event. If the Hyde amendment is the standard, however, the Ohio State Plan (M.A.L. 71) would essentially stand.

The present form of the Hyde amendment is as follows:

*Provided,* that none of the funds provided for in this paragraph shall be used to perform abortions except where the life of the mother would be endangered if the fetus were carried to term; or except for such medical procedures necessary for the victims of rape or incest, when such rape or incest has been reported promptly to a law enforcement agency or public health service; or except in those instances where severe and long-lasting physical health damage to the mother would result if the pregnancy were carried to term when so determined by two physicians.

Pub.L. 95–205, § 101, 91 Stat. 1460 (Dec. 9, 1977). This amendment, like the bulk of its state law progeny, was a rider to the HEW appropriations bill originally enacted in December of 1977. The defendants ask the Court to adopt the holding of the First Circuit Court of Appeals in *Preterm, Inc. v. Dukakis, supra,* that the Hyde amendment not only limited the availability of federal funds for abortion, but also "constituted a substantive policy decision concerning the public funding of abortions which left the states free to fund more abortions than those for which federal funds were made available by the Amendment, but did not require them to do so." 591 F.2d at 134. This conclusion was reached by reviewing the "legislative history" of the Hyde amendment and finding that the intent of Congress was silently to amend the substance of Title XIX, evidently altering those sections which the *Preterm* court itself found to conflict with state restrictions on the funding of therapeutic abortions.

Any statutory analysis begins, quite sensibly, with the words of the statute involved. Here, it is undisputed that the words of the amendment provide a plain meaning. The amendment states that "none of the funds provided for *in this*

---

**6.** There has been no serious challenge to the standing of these plaintiffs to raise these claims. As providers of health care and counseling services provided by the Social Security Act, these plaintiffs must meet certain requirements to receive funding. They are therefore "arguably within the zone of interests to be protected *or regulated* by the statute," *Data Processing Service v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970) [emphasis added], and they have standing to challenge violations of the statute which cause them injury. Because the alleged violations injure the plaintiffs directly, it is well established that they may assert the rights of others, such as their patients and clients. *Craig v. Boren,* 429 U.S. 190, 192–97, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); *Carey v. Population Services International,* 431 U.S. 678, 682–84, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977).

*paragraph* shall be used" to perform certain abortions; nothing more or less is done than to forbid the Secretary of HEW to use the federal funds so appropriated for those abortions. There is no hint in this language that the obligation of the states under Title XIX has been changed. Many courts feel it inappropriate to venture beyond the plain meaning of a statute when it can be found, *e. g., Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917), unless that plain meaning produces a result "plainly at variance with the policy of the legislation as a whole." *United States v. American Trucking Associations, Inc.*, 310 U.S. 534, 543, 60 S.Ct. 1059, 1064, 84 L.Ed. 1345 (1939). The *Preterm* court found that shifting the entire cost of most medically necessary abortions to the states produced a result "not consonant with the basic policy of the Medicaid system under which the federal government participates in the funding of medical services provided by the states. *See* 42 U.S.C. § 1396." 591 F.2d at 128. Thus, that Court resorted to additional materials from the Congressional enactment process to interpret the Hyde amendment.

This Court cannot agree that exclusive state funding of medically necessary abortions is at all at variance with the "basic policy" of the Medicaid system. The "basic policy" of Title XIX, embodied in § 1396, is to provide medical assistance and rehabilitation services for certain individuals. There is no intrinsic value in the federal-state cooperation involved in Title XIX, except as a means to this end. Section 1396 does not foreclose, even by intimation, the possibility that a state might be required to fund exclusively one or more services in order to receive the federal appropriations authorized by § 1396.[7] The Court would agree, however, that a Congressional departure from a customary practice may signal the propriety of further inquiry into the enactment process. *See United States v. American Trucking Associations, supra.*

The *Preterm* court, despite the strong dissent of Judge Bownes, found the legislative history of the Hyde amendment to be "illuminating." It was, in fact, so illuminating that that court found that Congress had silently repealed, in an appropriations rider, the provisions of Title XIX which conflict with state abortion funding restrictions.

 Implied repeal by means of an appropriations rider is strongly disfavored, and for good reason. *E. g., Tennessee Valley Authority v. Hill*, 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978). Appropriations bills must be passed continuously, and it would be an onerous burden for the members of Congress to have to scour such otherwise perfunctory measures for subtle repeals. They should be able to rely on the language of such bills, when that language is clear. In addition, such silent amendments are disfavored due to the coercive nature of appropriations bills with regard to passage. *See Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035 (1951) (Frankfurter, J., dissenting).[8] In the opinion of this Court, the *Preterm* decision falls far short in its attempt to justify a departure from these principles.

The *Preterm* court relied solely on the length and content of the floor debates in Congress in finding a substantive amendment to Title XIX. That Court recounted numerous statements during the debates which indicated that the speakers were under the impression that the Hyde amendment would do away with publicly funded abortions for poor women. This Court is unable to conceive how such statements

---

**7.** Indeed under another "cooperative" program, Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq., states have provided one hundred percent of some services. *Doe v. Busbee, supra* at 1333.

**8.** These factors have led to the adoption of House Rule XXI(2) which provides in part

Nor shall any provision in any [appropriations] bill or amendment thereto changing existing law be in order.

*See also* Standing Rules of the Senate, Rule 16.4.

could lead to a conclusion of implied repeal. In the first instance, legislative debates are perhaps the least reliable of enactment materials which can be used in interpreting statutes. It is a textbook principle that committee and conference reports are much more productive legislative materials. *See* Mishkin & Morris, *On Law in Courts* 402–09. No such conference or committee reports exist for the Hyde amendment. It is unduly naive to expect that even most Congressmen attend such floor debates, *id.* at 405 n. 1, and it should be noted that the reports of those debates in the Congressional Record are permitted to be edited by the speakers. *Id.* at 403.

Most bewildering is the *Preterm* court's observation that "the message of the legislation was conveyed most clearly by those who were opposed to restrictions or publicly funded abortions." 591 F.2d at 130. As was appropriately pointed out in *Doe v. Busbee, supra,* giving effect to the doomsday predictions of dissenters turns those predictions into self-fulfilling prophecies. *Id.* at 1334. It is often the nature of dissent to overstate the damage done by majority action. This fact has caused the Supreme Court to observe that "[t]he fears and doubts of the opposition are no authoritative guide to the construction of legislation." *Schwegmann Bros. v. Calvert Distillers Corp., supra,* 341 U.S. at 394, 71 S.Ct. at 750.[9] The *Preterm* court, however, expressed not the slightest reservation in using such opposition statements to find implied repeal.

This Court is unable to agree that the statements in those debates, however "pithy" can tenably lead to the conclusion that there existed "explicit awareness by the legislators that they were using the disfavored vehicle of an appropriations measure to legislate this result and that they were setting aside their rules to do so." 591 F.2d at 134. Even the debates themselves contain express statements that all Congress was concerned with in the Hyde amendment was federal dollars. *Id.* at 129.

The First Circuit's opinion concludes its statutory analysis with the observation that if this legislative history is insufficient to work a silent repeal of Title XIX, then substantive legislation by appropriations measures is impossible. *Id.* at 134. That observation fails to consider that the best evidence of Congressional intent is the language it ultimately adopted. The Congress could easily have enacted a substantive measure as an appropriations rider simply by adding language stating that the state's funding obligation under Title XIX is no greater than that of the federal government. There is no express intent to repeal portions of Title XIX in the Hyde amendment, and a silent repeal can be inferred only if the two statutes are "irreconcilable." *Tennessee Valley Authority v. Hill,* 437 U.S. 153, 192, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978). As indicated above, these two acts are not irreconcilable. The "cooperative federal-state structure of the Medicaid Act" is not so inflexible that these congressional measures cannot coexist. *Doe v. Busbee, supra* at 1333. Nor can the personal views of some legislators, especially opponents, override the legislatively expressed intent of the prior Congress which enacted Title XIX.

The fact that some may view the added burden created by the Hyde amendment upon the states as "anomalous" or "inequitable" is, of course, beyond the scope of proper inquiry for this Court. It is quite possible that the proponents of the amendment were unaware of its ramifications in light of Title XIX. It is not for this Court to attempt to improve upon what Congress has done because a litigant maintains that more would have been done if a certain problem were foreseen. The solution lies with Congress.

C. *Promotion of Medically Necessary Abortions.* Largely for the reasons given above, the Court finds that the plaintiffs have established a substantial likelihood of success on the merits of their claim that the Meshel amendment's restrictions on "promotion" of abortions also violates

---

9. It is not unusual in the judicial sphere to find that the fears of a dissenter prove to have been exaggerated. *See North Georgia Finishing, Inc.* *v. Di-Chem, Inc.,* 419 U.S. 601, 608, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975) (Stewart, J., concurring).

Title XIX. The "promotion" of abortion, whether it consist of counseling, encouraging, referring, assisting or even performing medically necessary abortions is included in the five general categories listed in 42 U.S.C. § 1396d(a). Limits on such activities which apply only to medically complicated pregnancies impermissibly discriminate on the basis of condition or diagnosis within the meaning of 42 C.F.R. § 440.230. There is no need at this point, in light of this holding, to consider the challenges to the "promote or assist" language based on the other titles of the Social Security Act or the Public Health Service Act.

 The defendants, however, have asked the Court to abstain from this decision until an Ohio court has the opportunity to construe the "promote" language of the Meshel amendment. This is a singularly inappropriate case for *Pullman* abstention.[10]

To abstain where Congress has clearly conferred jurisdiction is permissible "only in narrowly limited 'special circumstances' . . . justifying 'the delay and expense to which application of the abstention doctrine inevitably gives rise.'" *Lake Carriers' Association v. MacMullan*, 406 U.S. 498, 509, 92 S.Ct. 1749, 1756–1757, 32 L.Ed.2d 257 (1972) (quoting *England v. Medical Examiners*, 375 U.S. 411, 418, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964)). The defendants argue that the word "promote" is ambiguous and that a state court might construe it so as to eliminate the constitutional objections raised in this case. They do not explain how this could be done. Nor do they presently advocate any narrow construction which would save the statute. *See Bellotti v. Baird*, 428 U.S. 132, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976). In light of the Court's holding above that any restriction on the "promotion" of medically necessary abortions, from the slightest encouragement to the actual performance thereof, violates Title XIX, there can be no narrowing con-

struction which would obviate the Supremacy Clause claim here raised. Because "abstention should not be ordered merely to await an attempt to vindicate the claim in a state court," *Wisconsin v. Constantineau*, 400 U.S. 433, 439, 91 S.Ct. 507, 511, 27 L.Ed.2d 515 (1971), this Court will not abstain.

## II. Irreparable Harm

 The Court finds that the continuance of Ohio's restrictions on the funding of medically necessary abortions will cause irreparable harm to the plaintiffs, their patients, and the policies of the Social Security Act. The Court has found above that the result of these funding restrictions has been a decline in the number of medically necessary abortions among poor women and a concomitant increase in the maternal morbidity rate among these women. This fact alone was recently found by Justice Stevens to support a claim of irreparable injury. *Quern v. Zbaraz*, —— U.S. ——, at ——, 99 S.Ct. 2095, at 2099, 60 L.Ed.2d 1033.[11]

The plaintiffs are also harmed irreparably by the defendants' violations of Title XIX. The plaintiffs provide family planning services which rely on education of the public to be effective. The services sought to be provided by these plaintiffs and envisioned by the Social Security Act are irreparably frustrated by the restrictions on the flow of information to poor women imposed by the Meshel amendment. This damage cannot be calculated in terms of dollars with reasonable certainty. In addition, the potential loss of other federal monies resulting from compliance with the Meshel amendment would cause irreparable harm to the reputation of the plaintiffs causing the loss of business and potential termination of some of their services.

 The defendants have argued that the plaintiffs should be barred from injunctive relief with respect to M.A.L. 71 because

---

**10.** *See Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

**11.** Just as the plaintiffs may raise the rights of others (patients), *Craig v. Boren*, supra, so may the irreparable harm to those others be considered by the Court in determining the propri-

ety of injunctive relief. *See Population Services Int. v. Wilson*, 398 F.Supp. 321, 331–33 & 340 (S.D.N.Y.1975) (three judge court), affirmed sub nom. *Carey v. Population Services Int.*, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977).

they have not raised any objection to it in the nineteen months since its implementation. However relevant such delays may be in determining irreparable harm in other cases, the Court is unimpressed with that argument in this case. The plaintiffs raise the rights of a "categorically needy" class of women, the great majority of which are poor and poorly educated. They can hardly be expected to know of their statutory rights or to have the wherewithal to pursue vindication of those rights even if they could. Those who are now pregnant are not bound by the failure of previous others to raise these claims. Nor do these delays convince the Court that the plaintiffs suffer no irreparable harm. Considering the other litigation during the past year which has involved these plaintiffs at least as potential class members, *e. g., Woe v. Califano*, 460 F.Supp. 234 (D.C.1978), the Court finds no inexcusable delay in challenging M.A.L. 71.

### III. *Balance of Harms and Public Interest*

 The Court finds that the balance of harms tips in favor of the plaintiffs and their patients. The state has no economic interest in not supplying less expensive abortions while supplying more expensive maternity care; the state will potentially be burdened further by the medical expenses of a crippled mother with a "categorically needy" child. The state's legitimate interest in promoting childbirth can be pursued by other means which do not involve the denial of federal statutory rights.

Finally, the Court concludes that the public interest is served by the vindication of the Congressional policies embodied in the Social Security Act.[12]

### IV. *Class Certification*

 The plaintiff Susan Momeyer sues on her own behalf and on behalf of a class

comprising all persons who receive directly or indirectly public funds for family planning, for counseling or speaking to pregnant women concerning abortion, or for referring such women to the providers of other abortion services. Because it appears to the Court that the prerequisites of Rule 23(a) are met in this case, and that the class is proper under Rule 23(b)(2), the Court will so certify the class described above. The Court notes that the class includes only those eligible to receive public funds in Ohio for the counseling of medically necessary abortions. It does not include patients served by the plaintiff Momeyer, for she cannot represent a class of which she is not a member. *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977).

For the same reasons, the Court will permit the plaintiff Dr. Lawrence Levy to proceed as the representative of all duly licensed and certified providers of medical services to women in Ohio who are eligible for publicly funded services.

### *Conclusions of Law*

The Court has jurisdiction of this action under 28 U.S.C. §§ 1331(a) and 1343(3).

This action may properly proceed as a class action as described above.

The plaintiffs have shown a strong and substantial likelihood of success on their claim that the Ohio restrictions on funding for medically necessary abortion services violate Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq.

The plaintiffs have shown the present existence of and the continued probability of irreparable harm by the implementation of these restrictions.

A preliminary injunction will cause less harm to the defendants and others than would be suffered by the plaintiffs if a preliminary injunction is not granted.

---

12. The Court has considered the other arguments of the defendants' counsel and finds them to be without merit. The impact on the state treasury, incidental or otherwise, will not prevent the Court from ordering compliance with federal law. *See Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534

(1971); *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). Nor can it be argued that the only remedy available is the withdrawal of federal funds from the state. *See King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1969); *Regents v. Bakke*, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978).

A preliminary injunction will serve the public interest.

WHEREUPON, the Court determines that the motion for a preliminary injunction is meritorious and it is therefore GRANTED.

IT IS HEREBY ORDERED as follows: The defendants, their successors and assigns are ENJOINED from enforcing or otherwise implementing the Section 210 of House Bill 204, the 1979–80 biennial budget for the State of Ohio (the Meshel amendment) or the restrictions imposed by Medical Assistance Letter No. 71 until further order of this Court. The defendants, their successors or assigns are further ENJOINED until further order of this Court from refusing to fund all medically necessary abortions for recipients qualified under Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq., and the regulations promulgated pursuant thereto.

The United States Marshal shall make service of this order upon the defendants forthwith.

IT IS SO ORDERED.